## Nieto v 1054 Bushwick Ave., LLC

2024 NY Slip Op 32356(U)

July 9, 2024

Supreme Court, Kings County

Docket Number: Index No.: 519002/2017

Judge: Wavny Toussaint

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 70 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 9th day of July, 2024.

P R E S E N T:

HON. WAVNY TOUSSAINT,
                              Justice.
--------------------------------------------------------------X

GABRIEL NIETO,

                          Plaintiff,
          -against-

1054 BUSHWICK AVE., LLC AND ALL PURPOSE GC, LLC,


                          Defendants.
--------------------------------------------------------------X
1054 BUSHWICK AVE., LLC AND ALL PURPOSE GC, LLC,

                          Third-Party Plaintiffs
          -against-

SUPERPOWER ENTERPRISE, INC.,

                          Third-Party Defendant.
--------------------------------------------------------------X

Index No.: 519002/17

**DECISION AND ORDER**

The following e-filed papers read herein:

NYSCEF Nos.:

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed            277-296,297-324
Opposing Affidavits (Affirmations)           326-344,345-359,360-365
_____ Affidavits/ Affirmations in Reply    366; 367
Other Papers:                                _____

Upon the foregoing papers, 1054 Bushwick Ave., LLC (Bushwick) and All Purpose

GC, LLC (All Purpose) (collectively, defendants) move (Seq. 08), pursuant to CPLR

§ 3212, for, *inter alia*, summary judgment: (1) dismissing plaintiff Gabriel Nieto's (plaintiff) Labor Law § 200 and common-law negligence claims as asserted against them; (2) finding in their favor as to their third-party contractual indemnification claims asserted against third-party defendant Superpower Enterprise, Inc. (Super); and (3) for an order, pursuant to CPLR § 3126, precluding Super from testifying at the time of trial and from offering an affidavit in connection with any dispositive motions. Plaintiff opposes the motion.

Plaintiff moves (Seq. 09) for an order, pursuant to CPLR §3212, granting him summary judgment on liability as to the Labor Law §§ 240 (1) and 241 (6) claims asserted against defendants.[1] Defendants oppose the motion.

### Background Facts

On January 20, 2017, plaintiff sustained various injuries while performing demolition work on a construction project located at 1054 Bushwick Avenue in Brooklyn, New York. The project involved the construction of a new residential apartment building owned by Bushwick. Prior to the accident, Bushwick hired All Purpose to serve as the general contractor on the project. Thereafter, All Purpose subcontracted with plaintiff's employer Super to perform certain work on the project, including the demolition of an existing chapel situated on the land where the new building was to be constructed.

---

[1] Plaintiff's attorney's affirmation in support of his motion (but not his notice of motion) states that plaintiff also seeks dismissal of several affirmative defenses in defendants' answer. However, neither this affirmation nor plaintiff's memorandum of law in support contain any discussion or arguments setting forth a basis for such dismissal. Accordingly, that branch of plaintiff's motion is denied.

[* 2]

In or about December of 2016, plaintiff began working on the project as a laborer. While performing his work, plaintiff was supervised by Kewal Singh (Mr. Singh), who was also employed by Super. At all relevant times, plaintiff's work on the project consisted of removing plywood and beams from the first, second, and third floors of the existing chapel. In order to perform this work, plaintiff and three of his coworkers cut the plywood with an electric "Sawsall" in order to access the beams, then cut the beams into smaller pieces with the Sawsall. Thereafter, plaintiff and his coworkers tied a rope to each end of the cut beams and lowered them through a hole in the floor to ground level, with two workers holding each rope. Plaintiff testified that the holes in the floors of the building were present since he started working on the project. Plaintiff further testified that the cut beams lowered through the holes were approximately 12 to 13 feet in length and weighed approximately 180-200 pounds.

On the day of the accident, plaintiff and his coworkers were removing beams from the second floor of the chapel. However, unlike on previous days, only three workers were assigned to this task, plaintiff being one of them. When plaintiff asked Mr. Singh to assign an additional worker, Mr. Singh denied his request. Plaintiff also testified that, although Super had four safety harnesses at the jobsite, they were all being used by welders on the day of the accident. The accident occurred when plaintiff and his coworkers were lowering a cut beam through the hole on the second floor of the chapel to ground level, which was approximately nine feet below. Plaintiff was holding the rope on one end of the beam while his coworkers held the rope on the other end. According to plaintiff's testimony, although he told his coworkers to slowly lower the beam, they dropped their end of the

3

beam instead. As a result, the force generated by the falling beam suddenly pulled on the rope that plaintiff was holding. This in turn caused plaintiff to be pulled into the hole in the floor and fall to the ground below.

### *Procedural History*

By summons and complaint dated October 2, 2017, plaintiff commenced the instant action against Bushwick and All Purpose alleging that his injuries were caused by the defendants' violation of Labor Law §§ 240 (1), 241 (6), 200 as well as common-law negligence. Thereafter, Bushwick and All Purpose interposed a joint answer generally denying the allegations in the complaint. On May 25, 2018, defendants commenced a third-party action against Super seeking contractual indemnity, common-law indemnity, and damages for breach of contract for failure to procure liability insurance. After Super failed to interpose an answer, defendants moved for a default judgment against Super, which was granted by the Hon. Karen Rothenberg of this court in an order dated February 21, 2019. Super subsequently interposed an answer and defendants and Super entered into a stipulation vacating the default judgment, which was so-ordered by the court. In an order dated August 26, 2020, the Hon. Bruce M. Balter of this court granted defendants' motion to sever the third-party action. However, that order was reversed by the Appellate Division, Second Department (*See Nieto v 1054 Bushwick Ave., LLC*, 219 AD3d 754 [2d Dept 2023]).

On May 30, 2023, defendants moved for summary judgment dismissing plaintiff's Labor Law § 200 claim against them. Defendants further moved for an order extending their time to move for summary judgment under their third-party claims against Super. On

4

the same date, plaintiff moved for summary judgment under his Labor Law §§ 240 (1) and 241 (6) claims against defendants. At the time these motions were made, Super had yet to produce a witness to testify at an EBT notwithstanding the fact that it had been directed to do so in a court order. In an order dated October 10, 2023, this Court denied defendants' and plaintiff's respective motions without prejudice to renew. The Court further ordered Super to produce a witness for an EBT on or before November 17, 2023. Finally, the Court directed that any renewed summary judgment motions must be filed on or before January 17, 2024. Super failed to produce a witness by November 17, 2023, or at any time thereafter. On January 17, 2024, defendants and plaintiff filed the instant motions for summary judgment.[2]

***The Parties' Contentions***

***Motion Seq. 08***

***Defendants' Summary Judgment as to Plaintiff's Labor Law § 200 and Common-Law Negligence Claims***

Defendants move (Seq. 08) for summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims asserted against them. In support of their motion, defendants maintain that it is clear from plaintiff's own deposition testimony that they did not have the authority to direct, control, or supervise the work performed by plaintiff. In particular, defendants note that plaintiff testified that he was supervised solely

---

[2] As the Court's order of 10/10/23 directed the parties to file any renewed summary judgment motions or new substantive motions on or before 1/17/24 (NYSCEF Doc. No. 274), it was not necessary for the parties to include applications for leave to renew in their submitted summary judgments motions. Nonetheless, to the extent requested, such leave is hereby granted. The substantive applications for summary judgment have been considered and addressed by the Court herein, with the renewal applications having been afforded no further discussion.

[* 5]

by Mr. Singh, that he had never heard of All Purpose, and that he did not know who owned the building. Finally, defendants maintain that the hole through which plaintiff fell did not constitute a dangerous condition for which they can be found liable, since it was readily observable and was inherent in the work that plaintiff was performing at the time of the accident.

Plaintiff and Super have both submitted opposition papers to defendants' motion in which they raise the same argument. In particular, plaintiff and Super maintain that the hole through which plaintiff fell constituted a dangerous premises condition and that defendants have failed to demonstrate they did not create or have actual or constructive knowledge of this condition. In support of this claim, plaintiff and Super note that plaintiff testified that the hole through which he fell was present at the jobsite from the day he first started working there in late December of 2016. Thus, plaintiff and Super note that this hole was present for several weeks prior to the accident.

Defendants replied arguing, among other things, that plaintiff failed to submit evidence proving their negligence and that they had no duty to plaintiff, as his work was inherently dangerous. As to this argument, defendants point to plaintiff's own testimony regarding the nature of his job duties.

*Defendants' Contractual Indemnification Claims*

Defendants move for summary judgment under their third-party contractual indemnification claims against Super. In support of this branch of their motion, defendants point to an indemnification clause in the subcontract agreement between Super and All Purpose which states in pertinent part that:

6

"To the fullest extent permitted by law, [Super] shall indemnify, hold harmless and defendant [All Purpose] and [Bushwick] against any losses, claims, actions, demands, damages, liabilities or expenses . . . for damages because of bodily injuries . . . sustained by any person or persons, including [Super's] employees . . . arising directly or indirectly from the performance of [Super's] work or from any acts or omissions on the part of [Super], its employees, [or] agents."

Defendants maintain that, given the clear language in this clause, Super's obligation to indemnify them was triggered since it is undisputed that plaintiff's injuries arose out of the work Super was subcontracted to perform. Further, defendants maintain that this clause is fully enforceable since they did not control or supervise plaintiff's work and were not otherwise negligent.

In opposition to this branch of defendants' motion, Super contends that the underlying indemnification clause is unenforceable under General Obligations Law § 5-322.1 because it allows defendants to be indemnified for their own negligence. In addition, Super maintains that defendants' motion for contractual indemnity must be denied since there are issues of fact regarding whether defendants' own negligence contributed to the accident.

Defendants replied, arguing that the language of the indemnity clause affords them coverage as it regards the work performed by plaintiff and that further, their potential negligence is not a bar to coverage.

**Defendants' Motion to Preclude**

Defendants move pursuant to CPLR § 3126 (2), for an order precluding Super from testifying at trial and from offering an affidavit in connection with any dispositive motions.

In support of this branch of their motion, defendants point out that after they made a motion to compel Super to produce a witness for an EBT, the Hon. Rachel E. Freir of this court issued an order directing that Super appear for a deposition on or before June 6, 2023. Super did not comply with that order. Defendants further note that Super failed to comply with this Court's order directing that they produce a deposition witness on or before November 17, 2023. Under the circumstances, defendants maintain that Super's failure to comply with two separate court orders constitutes willful and contumacious conduct that warrants the sanction of precluding its witness from testifying at trial or from submitting any witness affidavits in dispositive motions.

In opposition to this branch of defendants' motion, Super's attorney (i.e., Super's insurance carrier's attorney) notes that Super is no longer an active company. Super further maintains that its conduct in failing to produce a deposition witness has not been willful or contumacious, since it has been unable to locate a witness with knowledge of the underlying accident/construction project. In support of this claim, Super submits investigation reports compiled by a private investigator it retained, that detail the efforts made trying to locate Mr. Singh. Super further submits an affidavit by its investigator stating that despite exhaustive investigative efforts, he has been unable to locate Mr. Singh. Under these circumstances, Super maintains that the appropriate sanction for its failure to produce a deposition witness is to preclude it from testifying at trial unless it produces Mr. Singh for a deposition at least 30 days before trial. Defendants replied, arguing that preclusion of Super is warranted given its documented failure to produce a witness for deposition.

[* 8]

*Motion Seq. 09*

*Plaintiff's Labor Law § 240 (1) Claim (Seq. 09)*

Plaintiff moves for summary judgment against defendants under his Labor Law § 240 (1) cause of action. In support of his motion, plaintiff points to his own uncontroverted deposition testimony that he fell a distance of nine feet through an open hole on the second floor of the chapel while performing demolition work on the construction project. Plaintiff also notes that no safety devices were provided which could have prevented his fall such as a safety harness, netting, or barricades around the hole. According to plaintiff, under relevant case law, the failure to provide such safety devices to protect him from falling through the hole constituted a prima facie violation of Labor Law § 240 (1) and that, as the respective owner and general contractor on the project, Bushwick and All Purpose are liable for this violation, as a matter of law.

In opposition to this branch of plaintiff's motion, defendants argue that the motion should be denied as premature pursuant to CPLR § 3212 (f) since Super has yet to produce a deposition witness. In this regard, defendants contend that Super's testimony is crucial since its witness (presumably Mr. Singh) would be able to testify as to the extent of the protection equipment that was available for plaintiff's use on the day of the accident. In any event, defendants argue that plaintiff has failed to establish that his accident was proximately caused by a violation of Labor Law § 240 (1). They further assert plaintiff was the sole proximate cause of the accident, since he testified that there were safety harnesses and ladders at the jobsite which he failed to use. Super also opposes on the same foregoing basis and additionally maintains that the statute does not

9

[* 9]

apply because the accident was caused by the collapse or fall of an object that was set to be demolished. Finally, Super argues that there is an issue of fact regarding whether or not plaintiff was subject to a gravity-related risk, since he did not know the dimensions of the hole into which he fell.

In reply, plaintiff argues he should not be prejudiced for Super's failure to produce its witness for deposition and that defendants' basis for denial of the motion pursuant to CPLR § 3212 (f) is therefore without merit. As to his § 240 (1) claims, plaintiff argues defendants failed to present sufficient evidence to raise a triable issue of fact, as he has demonstrated he fell from an elevated height and defendants failed to provide the requisite safety equipment and/or protections.

### *Plaintiff's Labor Law § 241 (6) Claim*

Plaintiff moves for summary judgment against defendants under his Labor Law § 241 (6) cause of action. In support of this branch of his motion, plaintiff argues that defendants violated New York State Industrial Code sections 12 NYCRR 23-1.7 (b)(1)(i), (ii) and (iii) and that these violations proximately caused his accident. Plaintiff essentially argues that each Code section is specific enough to support his § 241 (6) claim.

In opposition to this branch of plaintiff's motion, defendants and Super argue that plaintiff has failed to establish that these regulations are applicable given the circumstances of the accident. Defendants again contend the motion is premature given Super's missing deposition witness. Defendants further ague there is an issue of fact as to plaintiff's § 240 (1) claim, given plaintiff's testimony that there were ladders available and four harnesses on site, also available, but not used by plaintiff. As to plaintiff's §241(6) claim, defendants

[* 10]

contend an issue of fact is also raised, given plaintiff's testimony as to the nature of his job duties when considered under Code sections 12 NYCRR 23-7(b)(1)(i)(ii) and (iii) governing hazardous openings (i.e., no proof free access to opening was needed and no proof planking having been installed). Finally, defendants argue plaintiff's request to dismiss the affirmative defenses should be denied as no arguments supporting the request were made.

Super opposes, contending plaintiff's Labor Law § 240 (1) claims should be denied because: (1) plaintiff's failure to use a safety harness or ladder was the sole cause of his accident, (2) the statute does not apply to an accident caused by the collapse or fall of an object that was to be demolished (like the beams here) and (3) plaintiff cannot prove the elevation risk as he could not testify to the size of the hole in the floor. Super also contends the Labor Law § 241 (6) claim must be denied as plaintiff has failed to prove a violation of the various cited Industrial Codes.

In reply, plaintiff primarily argues he established defendants' violation of the referenced Industrial Codes, to which defendants have not submitted evidence to the contrary.

*DISCUSSION*

*Motion Seq. 08*

*Defendants' Summary Judgment as to Plaintiff's Labor Law § 200 and Common-Law Negligence Claims*

Defendants move for summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims against them. Labor Law § 200 is merely a

11

codification of the common-law duty placed upon owners and contractors to provide employees with a safe place to work (*Chowdhury v Rodriguez*, 57 AD3d 121, 127-128 [2d Dept 2008]). Liability for causes of action sounding in common-law negligence and for violations of Labor Law § 200 is limited to those who exercise control or supervision over the plaintiff's work, or who have actual or constructive notice of the unsafe condition that caused the underlying accident (*Bradley v Morgan Stanley & Co., Inc.*, 21 AD3d 866, 868 [2d Dept 2005]; *Aranda v Park East Constr.*, 4 AD3d 315, 316 [2d Dept 2004]; *Akins v Baker*, 247 AD2d 562, 563 [2d Dept 1998]). Specifically, "[w]here a premises condition is at issue, property owners [and contractors] may be held liable for a violation of Labor Law § 200 if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident" (*Ortega v Puccia*, 57 AD3d 54, 61 [2d Dept 2008]). However, when the condition in question is inherent in the work and readily observable, no liability may attach against an owner or general contractor (*Serpas v Port Auth. of New York*, 218 AD3d 620, 621-622 [2d Dept 2023]).

Where a plaintiff's claims implicate the means and methods of the work, an owner or a contractor will not be held liable under Labor Law § 200 unless it had the authority to supervise or control the performance of the work. "A defendant has the authority to supervise or control the work for purposes of Labor Law § 200 when that defendant bears the responsibility for the manner in which the work is performed" (*Ortega*, 57 AD3d at 62). General supervisory authority to oversee the progress of the work is insufficient to impose liability. If the challenged means and methods of the work are those of a

subcontractor, and the owner or contractor exercises no supervisory control over the work, no liability attaches under Labor Law § 200 or the common law" (*LaRosa v Internap Network Serv. Corp.*, 83 AD3d 905, 909 [2d Dept 2011]).

Here, the accident arose out of both a dangerous condition presented by the hole in the floor and the means and methods used by plaintiff's and his coworkers to lower the cut beams from the second floor of the chapel to the ground. However, contrary to plaintiff's and Super's argument, defendants may not be held liable under a theory of common-law negligence or Labor Law § 200 based upon the presence of the hole, since it was an open and obvious condition that was inherent in the work plaintiff was performing. In particular, the hole was inherent to the work since plaintiff and his coworkers lowered the cut beams through the hole and they could not have accomplished this task if the hole was covered or barricaded. Moreover, the hole was readily observable, and plaintiff was well aware of its presence since he was lowering the cut beam through the hole at the time of the accident.

With respect to means and methods, defendants have made a prima facia showing that they did not have any authority over the means and methods employed by plaintiff (and his Super coworkers) to lower the beams. Defendants relied on plaintiff's deposition testimony, as well as the testimony of All Purpose manager Mendel Berkowitz (Mr. Berkowitz). In particular, plaintiff testified that he was supervised solely by Mr. Singh. Plaintiff also testified that the only person who told him how to remove and lower the beams was Mr. Singh. Further, plaintiff testified that he had never heard of All Purpose, and that he never spoke to anyone who represented that they owned the building. In addition, Mr. Berkowitz testified that he only visited the jobsite once a week in order to

[* 13]

make sure that the subcontractors were following the building plans. When asked about the beam replacement work, Mr. Berkowitz testified: "it's part of [Super's] – it's part of [Super's] job. Wherever we needed to cut, he had to cut it up, put a new C-joist and put it back in. Safety, all of that was all his job." Plaintiff's and Super's opposition papers have failed to raise a triable issue of fact in response to defendant's prima facie showing.

Accordingly, that branch of defendants' motion which seeks summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims against them is granted.

### *Defendants' Contractual Indemnification Claims*

Defendants move for summary judgment under their third-party contractual indemnification claims against Super. The right to contractual indemnification is dependent upon the specific language in the contract (*Reisman v Bay Shore Union Free School Dist.*, 74 AD3d 772, 773 [2d Dept 2010]). In this regard, the obligation to indemnify should only be found where it is clearly indicated in the language in the contract (*George v Marshalls of MA., Inc.*, 61 AD3 925, 930 [2d Dept 2009]). Finally, a party seeking contractual indemnification must demonstrate that it was free of negligence since a party may not be indemnified for its own negligent conduct (*Cava Constr. Co., Inc. v Gaeltec Remodeling Corp.*, 58 AD3d 660, 662 [2d Dept 2009]; General Obligations Law §5-322.1).

It is undisputed that plaintiff's accident arose directly out of Super's work since plaintiff was employed by Super and carrying out the work Super was hired to perform at the time of the accident. Thus, Super's obligation to indemnify Bushwick and All Purpose

14

was triggered under the indemnification clause of the subcontract agreement between Super and All Purpose. Furthermore, contrary to Super's argument, the subject indemnification clause does not violate General Obligations Law § 5-322.1 since it contained "to the fullest extent permitted by law" language (*Lesisz v Salvation Army*, 40 AD3d 1050, 1051 [2d Dept 2007]). Finally, the court has already determined that neither Bushwick nor All Purpose were negligent. Accordingly, defendants are entitled to summary judgment under their contractual indemnification claims against Super.

## *Defendants' Motion to Preclude*

Defendants move pursuant to CPLR §3126(2), for an order precluding Super from testifying at trial and from offering an affidavit in connection with any dispositive motions. Where, as here, a party fails to produce a deposition witness based upon its inability to locate such a witness, the appropriate sanction is to preclude that party from calling a witness to testify at trial unless it produces a deposition witness not less than 30 days prior to trial (*Romano v Persky*, 117 AD3d 814, 816-817 [2d Dept 2014]; *Holloway v Station Bar Corp.*, 112 AD3d 784, 785 [2d Dept 2013]; *Williams v Ryder TRS, Inc.*, 29 AD3d 784, 785 [2d Dept 2006]). Accordingly, defendant's motion to preclude is granted to the extent that Super is precluded from offering testimony at trial unless it produces a deposition witness with knowledge of the underlying construction project not less than 30 days prior to trial.[3]

---

[3] That branch of defendants' motion which seeks to preclude Super from submitting witness affidavits in dispositive motions is moot since all dispositive motions have now been made, and no such affidavits have been submitted.

15

[* 15]

*Motion Seq. 09*

*Plaintiff's Labor Law § 240 (1) Claim*

Plaintiff moves for summary judgment against defendants under his Labor Law § 240 (1) cause of action. Labor Law § 240 (1) provides, in pertinent part, that:

> "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, [or] altering . . . of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) was enacted to "prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield an injured worker from harm directly flowing from the application of the force of gravity to an object or person" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). In order to accomplish this goal, the statute places the responsibility for safety practices and safety devices on owners, general contractors, and their agents who "are best situated to bear that responsibility" (*id.* at 500; *see also Zimmer v Chemung County Perf. Arts*, 65 NY2d 513, 520 [1985]). Further, "[t]he duty imposed by Labor Law § 240 (1) is nondelegable and . . . an owner or contractor who breaches that duty may be held liable for damages regardless of whether it has actually exercised supervision or control over the work" (*Ross*, 81 NY2d at 500).

Given the exceptional protection offered by Labor Law § 240(1), the statute does not cover accidents merely tangentially related to the effects of gravity. Rather, gravity

16

must be a direct factor in the accident as when a worker falls from a height or is struck by a falling object (*Ross*, 81 NY2d at 501; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). In falling object cases, "the claimant must demonstrate that, at the time the object fell, it either was being hoisted or secured, or required securing for the purpose of the undertaking" (*Houston v State of New York*, 171 AD3d 1145, 1146 [2d Dept 2019], citing *Fabrizi v 1095 Avenue of the Ams., LLC*, 22 NY3d 658, 662-663 [2014]). In addition, the statute "does not automatically apply simply because an object fell and injured a worker; '[a] plaintiff must show that the object fell ... because of the absence or inadequacy of a safety device of the kind enumerated in the statute'" (*Fabrizi v 1095 Avenues of the Ams., LLC*, 22 NY3d at 663, quoting *Narducci v Manhasset Bay Assoc.*, 96 N2d 259, 268 [2001]). In falling worker cases, the failure to provide individuals who are working in areas with holes in the floor with adequate fall protection constitutes prima facie evidence of a Labor Law § 240 (1) violation (*Zoto v 259 West 10th, LLC*, 189 AD3d 1523, 1524 [2d Dept 2020]; *Munzon v Victor at Fifth, LLC*, 161 AD3d 1183, 1185 [2d Dept 2018]; *Durando v City New York*, 105 AD3d 692, 695 [2d Dept 2013]; *Nasuro v PI Associates, LLC*, 49 AD3d 829, 831 [2d Dept 2008]).

Finally, "[a]lthough comparative fault is not a defense to the strict liability of the statute, where the plaintiff is the sole proximate cause of his or her injuries [or otherwise recalcitrant], there can be no liability under Labor Law § 240 (1)" (*Lojano v Soiefer Bros. Realty Corp.*, 187 AD3d 1160, 1162 [2d Dept 2020]). The sole proximate cause defense applies "when plaintiffs: '(1) had adequate safety devices available, (2) knew both that the safety devices were available and that [they were] expected to use them, (3) chose for no

17

good reason not to do so, and (4) would not have been injured had they not made that choice'" (*Biaco-Neto v Boston Rd. II Hous. Dev. Fund Corp.*, 34 NY3d 1166, 1167-1168 [2020], quoting *Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004]).

As an initial matter, there is no merit to defendants' argument that plaintiff's motion should be denied as premature based upon Super's failure to produce a deposition witness. As noted above, in previously denying plaintiff's motion without prejudice to renew, the Court directed in its prior order that Super produce a witness for an Examination Before Trial on or before November 17, 2023 and that any renewed summary judgment motions must be made by January 17, 2024. However, Super was unable to produce a witness and plaintiff timely made the instant motion for summary judgment on January 17, 2024. Plaintiff should not be deprived of the opportunity to move for summary judgment based upon Super's inability to locate a deposition witness. Finally, defendants may not be heard to argue that plaintiff's motion is premature when they themselves have moved for summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims.[4]

Turning to the merits of plaintiff's Labor Law § 240 (1) claim, plaintiff has made prima facie showing that his injuries were caused by a violation of this statute. In particular, plaintiff has presented his own sworn deposition testimony stating that he fell a distance of nine feet through the hole on the second floor of the chapel while performing demolition work. Plaintiff's testimony also indicates that no safety equipment was

---

[4] In this regard, defendants may have benefited from Super's failure to produce a deposition witness since such a witness may have offered testimony raising issues of fact regarding their authority to control and supervise plaintiff's work.

[* 18]

available for his use to protect him from falling, such as a safety harness or hoisting device to prevent the uncontrolled descent of the beam (*Runner v New York Stock Exchange, Inc.*, 13 NY3d 599, 604 [2009]; *Zoto*, 189 AD3d at 1524; *Munzon*, 161 AD3d at 1185; *Durando*, 105 AD3d at 695; [2013]; *Nasuro*, 49 AD3d at 831). Accordingly, the burden shifts to defendants and Super to submit sufficient evidence to raise a triable issue of fact regarding their liability under Labor Law § 240 (1).

Defendants and Super have failed to meet this burden. In particular, plaintiff's failure to use a ladder or safety harness was not the sole proximate cause of the accident. In this regard, although plaintiff testified that Super had four safety harnesses at the jobsite, he also testified that these harnesses were not available for his use on the day of the accident as they were being used by welders. Moreover, defendants and Super have failed to demonstrate how plaintiff's use of a ladder would have prevented the accident given the fact that he was lowering a beam using ropes at the time of the accident.

Also without merit is Super's argument that Labor Law § 240 (1) does not apply because the accident was caused by the collapse or fall of an object that was set to be demolished. In particular, while it is true that the chapel was being demolished at the time of the accident, plaintiff was not struck by a falling object as a result of this demolition work (*compare, Wilinski v 334 East 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 10 [2011]). Finally, contrary to Super's argument, the fact that plaintiff did not know the exact dimensions of the hole is insufficient to raise a triable issue of fact regarding defendants' violation of the statute since it is undisputed that the hole was large enough for plaintiff to fall through (*Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc.*, 104 AD3d

19

446, 449-450 [1st Dept 2013]). Accordingly, plaintiff's motion for summary judgment against defendants under his Labor Law § 240 (1) claim is granted.

### *Plaintiff's Labor Law § 241 (6) Claim*

Plaintiff moves for summary judgment against defendants under his Labor Law § 241 (6) cause of action. Labor Law § 241 (6) provides, in pertinent part, that:

> "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to persons employed therein or lawfully frequenting such places."

Labor Law § 241 (6), which was enacted to provide workers engaged in construction, demolition, and excavation work with reasonable and adequate safety protections, places a nondelegable duty upon owners and general contractors and their agents to comply with the specific safety rules set forth in the Industrial Code (*Ross*, 81 NY2d at 501-502). Accordingly, in order to support a cause of action under Labor Law § 241 (6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code provision that is applicable given the circumstances of the accident and sets forth a specific standard of conduct rather than a mere reiteration of common-law principals (*id.* at 503; *Ares v State*, 80 NY2d 959, 960 [1992]; *see also Reyes v Arco Wentworth Mgt. Corp.*, 83 AD3d 47, 51 [2d Dept 2011]).

12 NYCRR 23-1.7 (b) (1), which pertains to falling hazards, provides:

> (1) Hazardous openings.
>
> (i) Every hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or

by a safety railing constructed and installed in compliance with this Part [rule].

(ii) Where free access into such an opening is required by work in progress, a barrier or safety railing constructed and installed in compliance with this Part [rule] shall guard such opening and the means of free access to the opening shall be a substantial gate. Such gate shall swing in a direction away from the opening and shall be kept latched except for entry and exit.

(iii) Where employees are required to work close to the edge of such an opening, such employees shall be protected as follows:

(a) Two-inch planking, full size, or material of equivalent strength installed no more than one floor or 15 feet, whichever is less, beneath the opening; or

(b) An approved life net installed not more than five feet beneath the opening; or

(c) An approved safety belt with attached lifeline which is properly secured to a substantial fixed anchorage.

As an initial matter, Code sections 12 NYCRR 23-1.7 (b) (1) (i), (ii) and (iii) are all specific enough to support a Labor Law § 241 (6) claim (*Bonkoski v Condos Bros. Constr. Corp.*, 216 AD3d 612, 617 [2d Dept 2023]; *Ganger v Anthony Cimato/ACP Partnership*, 53 AD3d 1051, 1053 [4th Dept 2008]). However, 23-1.7 (b) (1) (i) is not applicable here since plaintiff and his coworkers could not have lowered the beam through the hole if it was covered or barricaded (*Salazar v Novalex Contr.*, 18 NY3d 134, 140 [2011]). Furthermore, 23-1.7 (b) (1) (ii) is inapplicable herein since the accident was not caused by the lack of a gate controlling access to the area surrounding the hole. In addition, 23-1.7 (b) (iii) (a) and (b) are not applicable because plaintiff only fell one floor (i.e., nine feet) and netting placed

21

five feet below the hole would have prevented lowering the beams to ground level. Plaintiff, however, has established that section 23-1.7 (b) (1) (iii) (c) was violated and proximately caused his injuries. In particular, plaintiff's uncontroverted deposition testimony indicates that no safety belts or lanyards were available for his use at the time of the accident. Further, had this safety equipment been available and used by plaintiff, it would have prevented him from falling to the ground.

Accordingly, that branch of plaintiff's motion which seeks summary judgment under his Labor Law § 241 (6) claim against defendants is granted to the extent that plaintiff relies upon a violation of 12 NYCRR 23-1.7 (b) (1) (iii) (c).

### Conclusion

Accordingly, it is hereby

**ORDERED**, that to the extent requested, the parties' applications for leave to renew are granted; and it is further

**ORDERED**, that the branch of defendants' motion (Seq. 08), which seeks summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims against them is granted; that branch of defendants' motion which seeks summary judgment under defendants' third-party contractual indemnity claims against Super is granted; and that branch of defendants' motion which seeks an order precluding Super from testifying at trial is granted to the extent that Super is precluded from offering testimony at trial unless it produces a deposition witness prior to trial, but in no event less than thirty (30) days prior to trial; and it is further

[* 22]

**ORDERED**, that the branch of plaintiff's motion (Seq. 09), which seeks summary judgment under his Labor Law § 240 (1) claims against defendants, is granted; and that branch of plaintiff's motion which seeks summary judgment against defendants under his Labor Law § 241 (6) claims is granted, but only to the extent that plaintiff relies upon a violation of Industrial Code Section 12 NYCRR 23-1.7 (b) (1) (iii) (c); and it is further

**ORDERED**, that the branch of plaintiff's motion (Seq. 09), to the extent it seeks dismissal of several affirmative defenses asserted by defendants in their answer, is denied.

This constitutes the decision and order of the Court.

ENTER

J.S.C.

HON. WAVNY TOUSSAINT
J. S. C.

23

[* 23]